2013 OK CIV APP 94

**In the Matter of the ESTATE OF Stanley R. LITTLETON, Deceased:**

**Lucille Kathryn Littleton, Petitioner/Appellant,**

v.

**Michael David Littleton, Respondent/Appellee.**

**No. 111,157.**

Court of Civil Appeals of Oklahoma, Division No. 1.

Oct. 23, 2013.

Sheldon B. Swan, Dunn Swan & Cunningham, Oklahoma City, Oklahoma, for Petitioner/Appellant.

Joseph H. Bocock, Elizabeth Bowersox, McAfee & Taft, a Professional Corporation, Oklahoma City, Oklahoma, for Respondent/Appellee.

ROBERT D. BELL, Acting Presiding Judge.

¶1 In this probate proceeding, Petitioner/Appellant, Lucille Kathryn Littleton (Wife), the surviving spouse of Stanley R. Littleton (Decedent), appeals the probate court's determination that certain trust property—real property at 4920 Tinker Diagonal—was Decedent's separate property and was not subject to Wife's forced heir right under 84 O.S.2011 § 44. Decedent's son, Respondent/Appellee, Michael David Littleton (Son), successor trustee and personal

representative of Decedent's estate, cross-appealed the probate court's refusal to include certain non-probate/non-trust assets in the value in the joint industry during coverture (JIDC) property subject to Wife's forced share. This property includes the marital residence held by Wife and decedent in joint tenancy with right of survivorship (with a mortgage balance), life insurance proceeds payable to Wife and personal property and effects. We affirm in part, reverse in part and remand for further proceedings.

¶2 Decedent and Wife were married June 1975 and remained married for 36 years until Decedent's death. During the marriage, the parties acquired 20 residential rental properties and commercial property at 4900 Tinker Diagonal Street. In 1974, prior to the parties' marriage, Decedent acquired title to commercial property at 4920 Tinker Diagonal Street (Car Lot), currently leased by a car business. During the 36-year marriage, title to Car Lot was conveyed between family members several times.[1] In 2006, Decedent transferred all the rental and commercial property to The Stanley Littleton Revocable Trust (Trust). Decedent died October 18, 2011. He was survived by Wife and his two children from a prior marriage, Cynthia Diane McConnell, his daughter, and Son.

¶3 Upon Decedent's death, the Trust, as amended, directed the Trustee to distribute to Wife the personal items, home furnishings and the monthly cash sum of $4,000.00 for her lifetime, payable 75% from the income of Car Lot and 25% from the income of 4900 Tinker Diagonal. Upon Wife's death, Car Lot was to be distributed to Son and 4900 Tinker Diagonal was to be distributed to daughter along with certain residential properties. The Trust also provided for cash gifts to relatives. Wife estimated the value of the Car Lot to be $1.2 million.

¶4 On May 21, 2012, Wife petitioned to probate Decedent's Last Will and Testament (Will) and requested the court to appoint Son as Personal Representative so the probate

1. When Decedent and his former spouse, Norma Littleton, were married, Norma transferred her interest in the property to Decedent. In July 1993, Decedent and Wife transferred title to Decedent and Son as joint tenants. In June 1999, Decedent and Wife and Son and Son's wife transferred title to Decedent and Son as joint tenants. In March 2001, Son and his wife transferred title to Decedent. In 2006, Decedent transferred title to this property to the Trust.

court could judicially determine Wife's elective share and order an appraisement. Wife submitted no consideration should be given to her receipt of non-probate/non-trust assets through joint tenancy, life insurance, retirement plans and lifetime gifts in determining the value of her forced share; instead, her forced share should be satisfied solely from Trust assets. Wife also alleged that from October 2011 through May 2012, the co-trustees failed to provide an inventory to her of the Trust and Estate assets, failed to appraise the commercial and residential rental properties, did not pay her the $4,000.00 April and May installments, and failed to place the beneficiaries' interests above their own. Thus, to assist her in deciding whether to renounce the Trust provisions and take under 84 O.S.2001 § 44 and § 213, Wife sought an appraisement of the estate and Trust assets.

¶ 5 Son was appointed Personal Representative and thereafter submitted his calculation of Wife's forced heir share. This calculation excluded the value of Car Lot on the basis that it was Decedent's separate property and not subject to Wife's forced heir right. Son's calculation also "augmented" the JIDC property by the value of non-probate/non-trust assets received by Wife through joint tenancy by right of survivorship, insurance proceeds and household furnishings. Wife objected to Son's calculation of her forced heir share. She submitted her own calculation of her forced heir share. Wife's calculation alleged her forced heir share of Trust/estate JIDC property was $1.2 million and that this sum far exceeded the present value of the lifetime payment of $4,000.00 per month.

¶ 6 After an evidentiary hearing, the probate court held the Car Lot was Decedent's separate property and that Wife failed to present evidence showing *Wife's efforts, skills or funds* contributed to any enhancement to the value of Car Lot. The court held Decedent intended to distribute Car Lot to Son. The probate court also held the homestead held in joint tenancy, the life insurance benefits and any retirement benefits will not be considered in the elective share. Wife and Son appeal.

¶ 7 A decedent's right to control disposition of property after his death and the widow's right of inheritance are statutory. *In re Estate of Jackson,* 2008 OK 83, ¶ 15, 194 P.3d 1269, 1273. A decedent may dispose of his property at death either by will pursuant to 84 O.S.2001 § 44, or by trust pursuant to 60 O.S.2001 § 175.1 and 84 O.S. 2001 § 301. Section 44(B)(1) provides:

> Every estate in property may be disposed of by will except that a will shall be subservient to any antenuptial marriage contract in writing. In addition, no spouse shall bequeath or devise away from the other so much of the estate of the testator that the other spouse would receive less in value than an undivided one-half (1/2) interest in the property acquired by the joint industry of the husband and wife during coverture. No person shall by will dispose of property which could not be by the testator alienated, encumbered or conveyed while living, except that the homestead may be devised by one spouse to the other.

The surviving spouse's election under § 44 is available even if a decedent places his estate assets in a revocable inter vivos trust. *Thomas v. Bank of Okla., N.A.,* 1984 OK 41, 684 P.2d 553.[2]

¶ 8 On appeal, Wife argues the probate court erred in determining Car Lot was Decedent's separate property, and thus, not subject to her forced heir share. Whether Car Lot is separate or JIDC property is a question of fact. The probate court's finding on a question of fact will not be disturbed unless that finding is against the clear weight of the evidence. *In re Lamar's Estate,* 1952 OK 132, ¶ 0, 206 Okla. 244, 242 P.2d 727.

¶ 9 When a court is asked to determine whether property is separate or marital, the same rules apply whether the issue is raised in a divorce or upon the death of a spouse. *Sanditen v. Sanditen,* 1972 OK 39, ¶ 8, 496 P.2d 365, 367–68. Marital property

---

2. *Thomas* ruled a spouse may not defeat a surviving spouse's share of an estate under § 44 by placing the estate assets in a revocable inter vivos trust with the deceased spouse retaining control of the assets while living. Even though *Thomas* addressed an earlier version of § 44, its ruling is applicable to the newer version of § 44 effective July 1, 1985.

is jointly acquired property which has been accumulated by the business side of the marriage. *Id.* at ¶ 4, 496 P.2d at 367. "Separate property includes, *inter alia* property owned by a spouse before the marriage, which retains its separate status during coverture because it is maintained in an uncommingled state as a spouse's individual property." *Thielenhaus v. Thielenhaus,* 1995 OK 5, ¶ 9, 890 P.2d 925, 930–31. The clear evidence shows Car Lot was acquired by Decedent before the marriage. Notwithstanding this evidence, Wife asserts Car Lot lost its identity as Decedent's separate property during the 36–year marriage and should be considered JIDC property subject to her forced heir share. The evidence does not support Wife's assertion.

■ ¶ 10 Even though rental income from this property was commingled with joint funds, such commingling did not transmute Decedent's ownership interest in Car Lot from separate property into JIDC property. Instead, such action only intermixed separate income with marital money to such an extent that the separate income lost its legal character as separate property. Furthermore, Wife's signature on grantor deeds to Car Lot did not cause a loss of its separate identity. Wife's signature as grantor was not necessary because she was a co-owner of the property. Instead, Wife's signature was only necessary to pass title free and clear of her possible statutory homestead claim. Oklahoma Constitution, Art. 12, § 2. For these reasons, we hold the probate court properly determined Car Lot was Decedent's separate property.

■ ¶ 11 However, our inquiry does not end here. The record demonstrates Wife and Decedent were both employed during the marriage until retirement. They held joint bank accounts, intermingled Car Lot's rental income in their joint accounts, claimed Car Lot's rental income on their joint income tax returns, used the joint accounts to pay Car Lot's real estate taxes and income taxes and used Car Lot's rental income for their combined living expenses. There was also evidence of a mortgage on this property that might have been serviced, in part, by joint funds. Thus, Wife, as the non-owning

spouse, may have acquired an interest in the enhanced value of Decedent's separate property through *either Decedent's or her efforts, skills or funds* during the marriage. *Thielenhaus,* at ¶ 9, 890 P.2d at 931.

> Where, as here, a spouse brings separate property to the marriage, its increased or enhanced value, produced by investment managed by neither spouse or by *appreciation, inflation, changing economic conditions, or circumstances beyond the parties' control,* cannot be treated as a divisible marital asset unless, of course, there be proof that the increase resulted from efforts, skills or funds of either spouse. The non-owning spouse's *interest in the increased separate estate of the other, when established through efforts, skills or expended funds, stands confined to the enhanced value of that separate property.* The burden is upon the non-owning spouse to show that the enhancement is the result of either spouse's endeavors.

*Id.* (Footnotes omitted.) Accordingly, the probate court erred when it focused *solely* on Wife's efforts, skills or funds in rejecting her claim to the enhanced value of the separate property.

¶ 12 The probate court's determination that Car Lot is not subject to Wife's forced heir share is reversed and remanded for further proceedings. On remand, Wife must be provided the opportunity to show that Car Lot's enhanced value, if any, during the 36–year marriage was the result of *either* spouse's endeavors. The probate court is further directed on remand to order a proper statutory inventory and appraisement of Decedent's estate and Trust for purposes of calculating Wife's forced heir share.

■ ¶ 13 In the proceeding below, the probate court refused to consider certain non-probate/non-trust property (the marital home held in joint tenancy with right of survivorship, life insurance and retirement accounts) in calculating the value of Wife's forced share. In his cross-appeal, Son argues the value of these assets must be pulled-back into the estate and considered in determining the value of Wife's elective share. Son's appeal requires us to interpret § 44. Statu-

tory interpretation is a question of law which we review *de novo. Arrow Tool & Gauge v. Mead,* 2000 OK 86, ¶ 6, 16 P.3d 1120, 1123.

¶ 14 The concept advanced by Son for calculating the forced heir share is akin to an "augmented" estate which has been adopted by sister states for their elective share statutes. Under the augmented estate concept, a surviving spouse's elective share is calculated by including non-probate assets over which the decedent had dominion and control during her or his lifetime. *See, e.g.,* Kansas Stat. Ann. § 59–6a202; Del.Code Ann. Tit. 12, § 902; N.J. Stat. Ann. § 3B:8–1; Mo. Ann. Stat. § 474.163.

¶ 15 Notwithstanding Son's equitable arguments for the application of this concept, the Oklahoma Legislature has not adopted this concept nor will we adopt an augmented estate concept by judicial fiat. Accordingly, we hold § 44 applies only to property passing by testate succession and/or under the terms of a revocable trust in which a decedent has some interest that survives his death.

¶ 16 Under Oklahoma joint tenancy law, Decedent had no interest in the joint tenancy homestead that survived his death. *Alexander v. Alexander,* 1975 OK 101, 538 P.2d 200. Upon the death of a joint tenant, the survivor takes the entire estate to the exclusion of heirs of the deceased. *Id.*

Creation of a joint tenancy in property establishes a present estate in which both joint tenants are seised of the whole. Unity of time, title, interest, and possession are requisites for creation, and the principle characteristic of the estate created is a right of survivorship.... This right of survivorship does not pass anything from a deceased joint tenant to the survivor since, by the very nature of joint tenancy, title of the joint tenant who dies first terminates at death and vests eo instanti in the survivor. Both cotenants being seised of the

whole, the survivor's estate simply is a continuation, or extension, of the surviving tenant's existing estate. A joint tenancy simply creates a present estate which, absent severance of the tenancy during life of both tenants, assures the surviving joint tenant absolute ownership of the whole subject matter of the joint tenancy.

*Clovis v. Clovis,* 1969 OK 170, ¶ 16, 460 P.2d 878, 881–82. We therefore hold the probate court properly refused to "augment" Decedent's estate for purposes of the elective share calculation by the value of the joint tenancy homestead received by Wife.

¶ 17 Furthermore, no Oklahoma decisions hold life insurance proceeds and retirement account benefits passing by contract to a surviving spouse should be pulled-back into a Decedent's estate for purposes of the § 44 election. To the contrary, *In re Estate of Wellshear,* 2006 OK CIV APP 90, ¶ 13, 142 P.3d 994, 997, held a decedent's IRA was not subject to a surviving spouse's forced share election to take against the will under § 44 because the beneficiary designation was not testamentary in nature.[3] For these reasons, we conclude the probate court properly refused to consider the value of life insurance proceeds and retirement accounts received by Wife in the elective share calculation. This portion of the probate court's order is thus affirmed.

¶ 18 AFFIRMED IN PART, REVERSED IN PART AND REMANDED.

JOPLIN, C.J., and HETHERINGTON, J. (sitting by designation), concur.

---

3. In *Wellshear,* the decedent designated his adult children as beneficiaries of his IRA. The surviving spouse alleged a claim against the IRA pursuant to § 44. *Wellshear* denied Wife's claim to the IRA under § 44, but granted the surviving spouse the opportunity under *Sanditen* to establish the value of her contributions of funds to the IRA and recover her marital share to the value of such contributions.